UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kenneth Danielson

    v.                                                  Civil No. 20-cv-782-JL
                                                         Opinion No. 2021 DNH 096

Tourist Village Motel, Inc.,

Tourist Village Motel, Inc.

    v.

Androscoggin Valley Hospital

## MEMORANDUM ORDER

This case involves insurance coverage and indemnification for a slip-and-fall incident that occurred on residential premises rented by an employer for occupancy by an employee. In early 2018, Plaintiff Kenneth Danielson allegedly slipped and fell on snow and ice that accumulated on the stairs outside of his apartment building, which was owned by Defendant Tourist Village Motel, Inc. Danielson asserts one claim of negligence against Tourist Village. Tourist Village, in turn, has brought a contract-based third-party claim against Androscoggin Valley Hospital, the lessee of the subject property and Danielson's employer. In its third-party complaint, Tourist Village seeks to enforce the indemnification and insurance procurement provisions in its lease with AVH.

Under the terms of the lease, AVH was to use the property to house its employees like Danielson. The lease contained a clause in which AVH agreed to indemnify Tourist Village against claims for personal injury to people on the premises, "except for those claims arising out of the negligence of [Tourist Village] . . . ." The lease also required AVH to maintain liability insurance, in which Tourist Village "shall be named co-insured."

Tourist Village alleges in its third-party complaint that AVH breached both of these provisions by refusing to indemnify Tourist Village in the event that Tourist Village is found liable in the underlying slip-and-fall case, and by placing limitations on Tourist Village's coverage under AVH's liability insurance policy. AVH moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). AVH argues that Tourist Village fails to allege facts stating a claim for indemnification under the lease. As to the insurance-related claim, AVH contends that the limited coverage extended to Tourist Village under AVH's liability insurance policy satisfied the lease requirement.

The court has subject-matter jurisdiction over the underlying slip-and-fall case under 28 U.S.C. § 1332(a)(1) (diversity) because Danielson is a citizen of Vermont, Tourist Village is a New Hampshire corporation, and the alleged amount in controversy exceeds $75,000. It follows that the court also has subject-matter jurisdiction over Tourist Village's third-party claims. See Metro. Life Ins. Co. v. Ditmore, 729 F.2d 1, 9 (1st Cir. 1984) ("Third-party claims, being by definition logically dependent on the resolution of the original suit, fall within the court's ancillary jurisdiction over that suit.").

After reviewing the parties' submissions and holding oral argument, the court denies AVH's motion. First, it is premature to dismiss AVH's indemnification claim because resolution of the claim requires a determination as to Tourist Village's negligence in the underlying slip-and-fall case, which is still in the discovery phase. Second, AVH fails to meet the burden for judgment on the pleadings as to the insurance claim because the language in the pertinent lease provision is ambiguous. Further factfinding is necessary to determine the meaning of the insurance procurement provision and, accordingly, whether AVH violated it, as Tourist Village claims.

I. **<u>Applicable legal standard</u>**[1]

A motion for judgment on the pleadings under Rule 12(c) is evaluated under essentially the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009). Under this standard, Tourist Village must plead "factual content that allows the court to draw the reasonable inference that [AVH] is liable for the misconduct alleged." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015). When assessing a motion for judgment on the pleadings, the court must "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Kando v. Rhode Island State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). AVH is entitled to judgment on the pleadings "only if the uncontested and properly considered facts

---

[1] Tourist Village states in a footnote within its objection that AVH's motion for judgment on the pleadings should have "arguably" been brought as a summary judgment motion because "pleadings in this case are not closed" and "AVH [] introduced documents beyond the pleadings including an Affidavit and Insurance Policy" along with its motion. Objection (doc. no. 18) at 1 n.1. The court disagrees. First, the pleadings were closed before AVH filed this motion on December 16, 2020, as Tourist Village and AVH had already filed the third party complaint and answer. See Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 42 n.2 (1st Cir. 2017) ("A party may move under Rule 12(c) once the defendant has filed his answer" (internal citation omitted)). Since AVH filed this motion, neither AVH nor Tourist Village has filed further crossclaims or counterclaims or amended their pleadings. Further, the deadlines for such filings and amendments have passed. Second, neither the insurance policy nor the affidavit attached to AVH's motion converts it to a summary judgment motion. When reviewing a Rule 12(c) motion, the court is permitted to consider "documents central to [the] plaintiff['s] claim . . . even when the documents are incorporated into the movant's pleadings." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (internal quotation omitted). The insurance policy is central to Tourist Village's claim that AVH breached the lease's insurance procurement provision. The affidavit confirms that the insurance policy provided to the court is a true and accurate copy of AVH's insurance policy. Doc. no. 16-2 at 2-3. The court does not rely on the affidavit, however, as Tourist Village does not seriously dispute this point. The court will treat this motion as one for judgment on the pleadings, as is appropriate under these circumstances.

3

conclusively establish [AVH's] entitlement to a favorable judgment." Id. (citing R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006)).

## II.  Background

The court gathers the following facts from the operative third-party complaint, "documents central to [Tourist Village's] claim[s]; and documents sufficiently referred to in the complaint[,] even when the documents are incorporated into the movant's pleadings." Lambert v. Fiorentini, 949 F.3d 22, 25 (1st Cir. 2020) (alterations omitted) (quoting Curran, 509 F.3d at 44). Here, that includes the lease agreement and the insurance policy in question. As it is obligated to do in the context of a motion for judgment on the pleadings, the court construes "all well-pleaded facts in the light most favorable to the non-moving party," in this case, Tourist Village, "and draw[s] all reasonable inferences in [Tourist Village's] favor." Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 140 (1st Cir. 2016).

This case arises from an alleged slip-and-fall incident. Danielson claims that on January 11, 2018, he slipped and fell on ice and snow that accumulated on the stairs leading to the front door of his apartment building, located at 144 Main Street in Gorham, New Hampshire. Danielson further claims that the stairs had not been shoveled or treated with ice melting products or sand. Tourist Village owns the property at 144 Main Street, and leased the premises to AVH for use as a residence for AVH's employees like Danielson. The lease provides that Tourist Village, as the lessor, "shall be responsible for the repair and maintenance of the demised premises."[2]

---

[2] Lease Agreement (doc. no. 5-1) at 4.

Danielson filed a negligence complaint in this court, alleging that Tourist Village breached its duty to maintain the premises in a reasonably safe condition and caused his fall and resulting injuries and losses.[3] Tourist Village answered the complaint and denied any negligence, also filing a third-party complaint against AVH—the operative complaint for the instant motion. Tourist Village asserts one claim for contractual indemnification and one claim of breach of contract, based on AVH's alleged failure to satisfy the lease's indemnification and insurance procurement provisions. The indemnification provision in the lease provides as follows:

> The LESSEE [AVH] hereby agree[s] to hold harmless and indemnify the LESSOR [Tourist Village] against all losses and claims (including those of the LESSEE and its agents, employees, licensees, invitees and guests) for death, personal injury, or property damage to any person or persons on or about the demised premises or otherwise arising out of the use or condition of the demised premises, except for those claims arising out of the negligence of LESSOR, its servants and employees[.][4]

And the insurance procurement provision provides:

> LESSEE [AVH] annually shall provide LESSOR [Tourist Village] with a certificate of insurance with liability coverage in the amount of One Million Dollars ($1,000,000) per incident. LESSEE shall maintain such insurance in full force and effect for the duration of this lease, and LESSOR shall be named co-insured in any such policy of insurance[.][5]

AVH maintained a commercial liability insurance policy that was effective at the time of the slip-and-fall incident. An endorsement[6] to the policy entitled "Additional Insureds

---

[3] See Third Party Complaint (doc. no. 5) at 1-2 (citing Danielson's Complaint (doc. no. 1) at ¶¶ 8, 13).

[4] Lease Agreement (doc. no. 5-1) at 4.

[5] Id. at 3.

[6] The insurance policy defines an endorsement as "the only method by which the terms and conditions of your policy can be altered." Insurance Policy (doc. no. 16-2) at 8. Specifically,

Endorsement – Leased Equipment and Premises" ("AI Endorsement") extended coverage to Tourist Village as a "person or entity that . . . provides equipment or premises to an Insured [AVH] pursuant to a written lease agreement[.]"[7] This coverage applies if the Additional Insured "is named in a claim solely as a result of the acts or omissions of an Insured [AVH] in the maintenance, operation, or use of the equipment or premises leased to an insured business [AVH]."[8]

### III. Analysis

As mentioned above, Tourist Village asserts two claims against AVH—one claim for contractual indemnification and one claim of breach of contract with respect to both the indemnification and insurance procurement provisions in the lease. As explained below, the court denies as premature AVH's motion for judgment on the pleadings as to the indemnification-related claims. The court also denies AVH's motion as to the insurance-related breach of contract claim because the record before the court does not conclusively establish--as AVH claims--that AVH satisfied the lease's insurance procurement provision.

#### A. Indemnification-related claims

The indemnification provision in the lease provides in pertinent part that AVH agrees to indemnify Tourist Village "against all losses and claims . . . for death, personal injury, or property damage to any person or persons on or about the demised premises . . . , except for

---

endorsements "modify the terms and conditions of all or part of the policy and become a part of your policy." Id.

[7] Id. at 123.

[8] Id.

those claims arising out of the negligence of LESSOR [Tourist Village], its servants and employees." The parties' dispute centers on the sufficiency of Tourist Village's allegations regarding the negligence exception.

AVH argues that the indemnification claims should be dismissed because Tourist Village does not, and cannot, allege that Danielson's claim arises out of AVH's negligence. Without such factual allegations, AVH avers, the indemnification obligation cannot be triggered. AVH's argument is misplaced. Under New Hampshire law, where "there is an express contract providing for indemnity, . . . the right to indemnity is determined by the specific terms of the contract for indemnity." Gray v. Leisure Life Industries, 165 N.H. 324, 328 (2013). Furthermore, the terms of indemnity agreements are strictly construed. Id. (citing Kessley v. Gleich, 161 N.H. 104, 108 (2010)). Nothing in the language of the indemnification provision or the lease suggests that AVH's obligation to indemnify Tourist Village only applies to claims arising out of AVH's negligence. Thus, AVH's argument is unavailing.

Tourist Village, on the other hand, contends that AVH's indemnification obligation is triggered by claims that arise out of the negligence of anyone other than Tourist Village. Tourist Village further asserts that it sufficiently alleges AVH's negligence as well as the negligence of others in its answer to Danielson's complaint. Indeed, Tourist Village denies negligence and fault and asserts "comparative negligence and fault" and "fault of third-parties" as affirmative defenses in its answer.[9] These boilerplate, conclusory affirmative defenses, however, do not constitute factual allegations.[10] Tourist Village does not allege facts supporting the inference

---

[9] Def.'s Answer (doc. no. 4) at 3-4.

[10] The operative pleadings for the purposes of this motion are Tourist Village's third-party complaint and AVH's answer, so the court is skeptical as to whether it can consider affirmative defenses listed outside of these pleadings when assessing this motion. The court need not

that AVH's negligence or the negligence of others gave rise to Danielson's underlying claim; nor does Tourist Village allege facts negating its own negligence.

Nevertheless, it would be premature to dismiss the indemnification-related claims on this record and under this procedural posture, as resolution of the claims necessitates a determination regarding Tourist Village's negligence in the underlying slip-and-fall case. The court cannot make such a determination at this juncture, given that it is Danielson's burden to prove its negligence claim against Tourist Village, and discovery in the case is ongoing. The court will be better positioned to adjudicate Tourist Village's indemnification claims against AVH after Danielson and Tourist Village litigate the underlying negligence claim to a reasoned conclusion, or at least eliminate all material factual disputes. Accordingly, the court denies AVH's motion for judgment on the pleadings as to Tourist Village's indemnification-related claims.

### B. Insurance-related claim

AVH also moves for judgment on the pleadings on the claim that it breached the insurance procurement provision in the lease. Resolution of this dispute centers on the meaning of the relevant provision.

Under New Hampshire law, "[a] lease is a form of contract that is construed in accordance with the standard rules of contract interpretation." Echo Consulting Services v. North Conway Bank, 140 N.H. 566, 569 (1995). "Interpretation of a contract, including whether a contract term or clause is ambiguous, is ultimately a question of law for [the] court to decide." Moore v. Grau, 171 N.H. 190, 194 (2018) (quoting Merrimack School Dist. v. Nat'l School Bus. Serv., 140 N.H. 9, 11 (1995)). When interpreting a contract, the court's "inquiry focuses on the intent of the

---

resolve this issue, however, because the court does not rely on the affirmative defenses in resolving this motion in favor of Tourist Village. Instead, the court denies AVH's motion for an unrelated reason.

contracting parties at the time of the agreement." Found. for Seacoast Health v. HCA Health Servs. of New Hampshire, Inc., 157 N.H. 487, 492 (2008) (quoting R. Zoppo Co. v. City of Dover, 124 N.H. 666, 671 (1984)). "In the absence of ambiguity, the parties' intent will be determined by the plain meaning of the language used[,]" based on the "common meaning" of the terms. Greenhalgh v. Presstek, 152 N.H. 695, 698 (2005) (internal citations omitted). Contract language is considered ambiguous "if the parties to the contract could reasonably disagree as to the meaning of that language." N.A.P.P. Realty Tr. v. CC Enterprises, 147 N.H. 137, 139 (2001) (internal quotation omitted). If the language of the agreement is ambiguous, then the court should proceed to "determine[], under an objective standard, what the parties, as reasonable people, mutually understood the ambiguous language to mean." Behrens v. S.P. Const. Co., 153 N.H. 498, 503 (2006).

      The lease's insurance procurement provision requires that AVH obtain liability coverage for the duration of the lease, "and the lessor [Tourist Village] shall be named co-insured in any such policy of insurance." The parties dispute the meaning of the phrase "named co-insured." Tourist Village insists that "a named co-insured is another named insured where the co-insured has all the coverages under the policy," and the co-insured's name appears in the policy.[11] AVH does not provide a specific definition for "named co-insured," but it asserts that the AI Endorsement in its insurance policy satisfies the lease's insurance procurement provision. Importantly, AVH does not suggest that the AI Endorsement provides the full coverage available under the policy to Tourist Village, as the AI Endorsement explicitly limits coverage to situations in which Tourist Village is "named in a claim solely as a result of the acts or omissions

---

[11] Objection (doc. no. 18) at 2.

[of AVH]." Based on an assessment of the common meaning of the pertinent terms, the court concludes that neither party's interpretation is clearly wrong, and the phrase is ambiguous.

To begin, Tourist Village does not cite authority supporting its assertions that a "named co-insured" must be identified by name in the insurance policy and must have the full coverage available under the policy. Rather than cite cases defining the term at issue – "named co-insured" – Tourist Village cites two cases for the separate proposition that additional insureds and named insureds are treated differently under insurance policies. Indeed, in both cases, the court considered the language of the relevant insurance policies and found that the policies imposed limiting provisions on the coverage of "additional," but not "named," insureds. See Nat'l Union Fire Ins. Co. v. NGM Ins. Co., Civ. No. 11-cv-303, 2011 WL 6415484, at *3 (D.N.H. 2011) (DiClerico, J.); Massachusetts Bay Ins. Co. v. Am. Healthcare Servs. Ass'n, 170 N.H. 342, 354-55 (2017), modified (Nov. 13, 2017). These cases do not directly or necessarily support Tourist Village's argument.

Furthermore, the court has not found authority confirming Tourist Village's definition of "named co-insured" or AVH's position that the AI Endorsement satisfies the terms of the lease. First, the modifier "named" does not conclusively establish whether the co-insured should be identified by name (as Tourist Village contends) or by description (as the AI Endorsement provides).[12] Black's Law Dictionary defines "named insured" as "a person designated in an

---

[12] The court can also construe "named" as a verb, since it follows the auxiliary verb "be" in the lease language: "lessor shall be named co-insured in any such policy of insurance." Lease Agreement (doc. no. 5-1) at 3. This construction does not change the court's conclusion, however. The American Heritage Dictionary of the English Language (5th ed. 2020) defines the verb "name" as, "to mention, specify, or cite by name" or "to specify or fix." The latter definition leaves room for specification in different forms, including by name or by description. Thus, the verb "name" as it appears in the insurance procurement provision is subject to reasonable differences in interpretation and ambiguous.

insurance policy as the one covered by the policy." Black's Law Dictionary (11th ed. 2019). This definition does not specify how the named insured must be designated--by name or by description. Case law does not resolve this ambiguity. For example, "the courts of Florida have consistently held that the term 'named insured' has a restricted meaning and does not apply to persons not specifically named in the policy." Se. Fid. Inx. Co. v. Suwanee Lumber Mfg. Co., 411 So. 2d 950, 951 (Fla. 1st DCA 1982) (citing Kohly v. Royal Indemnity Co., 190 So.2d 819 (Fla. 3rd DCA 1966)). On the other hand, courts in North Carolina have "ma[de] clear that an insurance policy can have multiple named insureds and that persons (or entities) can be named insureds without the policy identifying them as such." Vincent v. AMCO Ins. Co., 821 F. App'x 220, 226 (4th Cir. 2020) (citing North Carolina state court cases). Since neither the court nor the parties have identified a clearer definition of "named" in New Hampshire insurance law, both parties' interpretations are reasonable, and the term is ambiguous.

Second, the term "co-insured" frequently appears without a clear explanation as to the associated scope of coverage. For example, "co-insured" is repeatedly used interchangeably with "insured" in cases concerning the right of a landlord's insurance carrier to seek subrogation against a tenant, but the cases do not indicate whether a "co-insured" or a "named co-insured" enjoys the policy's full coverage. See, e.g., Ro v. Factory Mut. Ins. Co. as Trustees of Dartmouth Coll., No. 2019-0620, 2021 WL 915034, at *2 n.2 (N.H. Mar. 10, 2021) ("Anti-subrogation on the theory that the tenant is an implied coinsured of the landlord implements the principle that an insurer 'cannot seek to subrogate against its own insured . . . .'" (internal quotation omitted)). In one subrogation case, the Supreme Court of Washington stated that "'co-insured' . . . does not apply only to named insureds, but to all for whose benefit the insurance was written." Gen. Ins. Co. of Am. v. Stoddard Wendle Ford Motors, 67 Wash. 2d 973, 979

11

(1966). This suggests that an entity can be considered a co-insured whether it receives full or partial coverage under an insurance policy, as long as it benefits under the policy. Given that the term "co-insured" is not necessarily tied to a particular scope of insurance coverage, the term is reasonably susceptible to both parties' interpretations and thus ambiguous.

The next step is to use an objective standard to determine "what the parties, as reasonable people, mutually understood the ambiguous language to mean." Behrens, 153 N.H. at 503. AVH argues that the insurance procurement provision should be read in conjunction with the indemnification provision to ascertain the parties' intent. According to AVH, it would be unreasonable to conclude that AVH "[in]tended to name Tourist Village as an insured for all purposes," as that would contradict the indemnification provision, which contains an exception for all claims "arising out of" Tourist Village's negligence.[13]

AVH's argument fails for at least two reasons. First, New Hampshire courts recognize that parties can agree to indemnification and insurance procurement provisions with differing scopes. See One Beacon Ins., LLC v. M & M Pizza, Inc., 160 N.H. 638, 642 (2010) (rejecting the argument that the broad, "arising out of" language used in the indemnification provision of a lease should be dismissed as "mere surplusage" because the lease's insurance procurement provision was more narrow in scope). Second, Tourist Village's broad interpretation of the insurance procurement provision does not necessarily contradict the indemnification provision's negligence exception. The two provisions could arguably be read together to grant Tourist Village up to $1,000,000 of liability insurance coverage per incident for all claims to which the insurance applies, as well as indemnification beyond $1,000,000 for any claims that do not arise out of Tourist Village's negligence.

---

[13] Reply (doc. no. 20) at 2.

The parties do not provide other arguments or evidence to facilitate the court's interpretation of their mutual understanding of the insurance procurement provision. Since the language of the contract is ambiguous and the intent of the parties is not discernible on this record, the court cannot conclude that the facts "conclusively establish" that AVH satisfied the provision and is "entitle[d] to a favorable judgment." See Kando, 880 F.3d at 58. It is possible, though not certain, that the court could make this determination in a different procedural posture (such as summary judgment under Rule 56 or directed verdict at trial under Rule 50), but that is a question for another day. Under the applicable standard of Rule 12(c), the court must deny AVH's motion.

## IV. Conclusion

For the foregoing reasons, AVH does not merit judgment on the pleadings. AVH's motion for judgment on the pleadings[14] is accordingly DENIED.

**SO ORDERED.**

*/s/ Joseph N. Laplante*
Joseph N. Laplante
United States District Judge

Dated: June 4, 2021

cc: Philip R. Waystack, Jr., Esq.
Rebecca Anne Witmon, Esq.
Brian Andrew Suslak, Esq.
William N. Smart, Esq.
Debra L. Mayotte, Esq.
Gary M. Burt, Esq.

---

[14] Doc. no. 16.

13